## GAINES *v.* HAMMOND'S ADM'R.

*(Circuit Court, E. D. Missouri.* February 5, 1881.)

1. STATUTE OF LIMITATIONS—LETTERS OF ADMINISTRATION—MISSOURI.

The bar of the statute of limitations (Missouri) is not removed by the issuance of letters of administration upon the estate of the deceased debtor.

2. SAME—SAME—SAME.

This rule is not modified by the fact that it was not known that the decedent had any estate calling for administration until after the expiration of the statutory period of limitation.

3. SAME—LITIGATION WITH THIRD PARTIES.

Such statute does not cease to run merely because the creditor is involved in litigation with third parties, upon which her individual right to the debt is dependent.

4. SAME—SUCCESSIVE COVERTURES.

Such creditor cannot tack her subsequent disabilities by successive covertures in order to prevent the operation of the statute of limitations.

5. UNIVERSAL LEGATEE UNDER VALID WILL—EXECUTORS UNDER VOID WILL—JUDGMENT.

*Quære,* whether a universal legatee under a valid will has any interest in a judgment obtained by the executors of a prior void will.

6. DECEDENT'S ESTATE—ADMINISTRATION—GRANT TO REPRESENTATIVES.

*Quære,* whether a grant by the United States to the representatives of a decedent of a tract of land claimed by the decedent, and taken in execution for his debts, but to which he had in fact no legal title during his life-time, could be treated as the individual estate of such decedent, and subjected to administration.

7. STATUTE OF LIMITATIONS—VOID SALE—PURCHASERS.

*Quære,* whether, under the circumstances of this case, after the expiration of more than half a century, lands could be recovered from purchasers under a void sale.

8. PRIOR KNOWLEDGE OF THE FACTS—BILL FILED IN 1848.

*Held,* that it appeared from a bill filed in the court in 1848 that the plaintiff was fully informed of all the facts which it is now averred she did not discover until a date long subsequent.—[ED.

In Equity.

This is a demurrer to a bill in equity. The bill alleges as a ground for equitable relief, in substance, the following facts: Complainant is the daughter of Daniel Clark, and the devisee of all his property by his will executed in 1813. She

v.6,no.5—29

was born in 1806, but was brought up in the family of one
Davis, with whom she resided in New Orleans until 1812,
when she went with them to Philadelphia. She was married
in Philadelphia to one Whitney, in 1832. Whitney died in
1838. In 1845 she married General Gaines, who died in 1858.
She only discovered her true parentage in 1834. Of the will
under which she took she was also ignorant until then, and
for more than 30 years thereafter she was engaged in law-
suits, by which she finally was able to prove the authenticity
of the will of 1813, finally established. Clark died in 1813.
A will executed in 1811 was probated as his last will, and
Relf and Chew, as executors, acted under it for many years.
Among other things, Relf and Chew appointed defendant's
intestate, Hammond, to sell certain lands in Missouri. Ham-
mond did so, but converted a part of the money derived from
the sales to his own use in and before April, 1819. Suit was
brought to recover the sum due in April, 1819, and judgment
was rendered for Relf and Chew in August of that year for
$6,841.80, which was affirmed on appeal in 1823, and cer-
tain property was sold on execution as land belonging to
Hammond in October, 1823. This land was bid in by Relf
and Chew, and was sold by them to various persons, who held
possession of it for many years. No title passed, however, to
Relf and Chew at the sale on execution, because the interest
which Hammond had in the land was simply a New-Madrid
claim, and no return was made as required by the act of
1822. There were other reasons also why no title passed.
Hammond, it is alleged, absconded from Missouri in Decem-
ber, 1824. He died in Maryland in 1842. No letters of
administration were granted on his estate until 1879. The
title to the land above mentioned remained in the United
States until June, 1864, when it was granted by the govern-
ment to Joseph Hunot or his legal representatives, or, in
other words, to the representatives of Hammond. This fact
was not known to complainant until 1879, when the supreme
court of Missouri held that Hammond's representatives were
entitled to the property, and that the representatives of Relf
and Chew obtained no title thereto whatever under the exe-

cution sale in 1823. Hammond had no other property. The bill alleged that Relf and Chew were executors in their own wrong; that complainant only had a right to the money converted to Hammond; that the judgment against him is evidence of the fact of his receiving and converting the money, and that, under the facts, she is entitled to judgment for the money converted, with interest, for which she prays. The bill sought to state ground of excuse for a failure to bring suit before, alleging the absconding of Hammond from Missouri; that no letters had been taken out on his estate before 1879; complainant's difficulty in establishing her rights under Clark's last will; the fact that Hammond's estate never was seized of the property until 1879; and her ignorance that Hammond had any title whatever to the land until that year. The demurrer was both general and specific, and raised the question whether the claim was not barred by the statute of limitations of Missouri territory and state, allowing only *five years* for the bringing of an action like the present one.

*Britton A. Hill* and *N. Oscar Gray*, for plaintiff.

*Cline, Jamison & Day* and *D. T. Jewett*, for defendant.

TREAT, D. J. I commenced to write an elaborate opinion, but found it expanding to such an extent, that, for want of time, I abandoned the purpose. The case, as presented, involves many serious questions, if considered *seriatim*, but there is one controlling view which disposes of the whole matter.

The plaintiff was *sui juris* more than 50 years ago, and if she succeeded (which is doubtful) to the rights of Relf and Chew under the judgment of 1819 in their favor, no adequate reason has been assigned in law or equity for her failure to pursue her rights thereunder prior to 1879 or 1880. If she cannot have the benefit of said judgment in her own right, she is in a still worse condition. Relf and Chew, under the will of 1811, have been found, judicially, to have acted without authority; for said will, after protracted litigation, was held to have been superseded by the will of 1813. Hence, what Relf and Chew did, and what their agent, Hammond, did, was void, or voidable, as against said persons; and she

has slept on her rights, if she had any, for more than 50 years.

But it is contended that as Hammond absconded from Missouri in 1824, and died in 1842, and it was supposed his interest in the Hunot tract had been disposed of under the sheriff's sale in 1823, it was not known that he had any estate calling for administration till 1879.

Hammond had what is termed a New Madrid claim, upon which levy had been made under the judgment of 1819. That claim came to naught for failure to make the return required by the act of 1822. For that and other reasons stated by the supreme court of Missouri, nothing passed to the purchasers at the sheriff's sale under the judgment of 1819.

If Hammond owed anything to the Clark estate, she had a right to pursue her demand as soon as she attained her majority, and cannot tack her subsequent disabilities by successive covertures to prevent the operation of the statute of limitations. Hence, if she claims that said judgment enures to her benefit there are two complete defences thereto: *First,* the statute of limitations; *second,* the presumption of payment after the lapse of 50 years. If her demand is on an open account against Hammond, and she is willing to waive his unauthorized action and treat him as her agent, that demand accrued as early as 1819, and he has been dead, so far as she is concerned, for nearly 38 years before this suit was brought.

It is claimed that, inasmuch as no administration was taken on Hammond's estate until 1879, the plaintiff has the statutory period after letters of administration to establish her demand, however stale. I do not so read the Missouri decisions cited, and if they asserted any such doctrine there would be an end indefinitely to statutes of repose in case of death and failure to administer. The administration statutes require claimants to present their demand within the times stated, or stand barred. They do not revive claims previously barred by the statutes of limitation. I so understand the supreme court of Missouri to hold—a ruling in conformity with well-recognized doctrines on that subject.

It seems that Hammond, under the rulings of the United States supreme court, had no such interest in the Hunot tract that, during his life-time, he could have maintained ejectment therefor, or that could possibly have been reached by execution. By the special act of congress in 1864, there was confirmed to him and his legal representatives the Hunot tract; that is, about 22 years after his death. Whatever may have been subsisting demands against him prior to his death, subject to be enforced through administration on his estate, it might be a grave question whether the grant of 1864 could be treated as his individual estate, subject to administration. At the time of his death neither he nor the purchasers at the sheriff's sale in 1823 had any legal interest in the Hunot tract. All interest he might have had in the same was barred in 1823 through his failure to comply with the act of 1822.

Thus matters stood until congress, 22 years after his death, confirmed to his legal representatives the tract spoken of. It has been held that, even taking the broadest view of the doctrines laid down in *Landes* v. *Brant*, Relf and Chew took nothing under the sheriff's deed of 1823, much less this plaintiff. It seems that other parties in interest, through protracted litigation, ascertained in 1879 that the only legal representatives of Hammond under the act of 1864 were his heirs. So soon as that fact was thus judicially ascertained, the plaintiff caused administration to be had on Hammond's estate, about 37 years after his death, in order to prove up, it may be, a judgment to which she was not a party, rendered about 60 years before, or on an open account, which, by waiving the original wrong, she might have had established in 1819, or at least so soon as she became *sui juris*, more than 50 years ago. The bill, however, recites what has almost become judicial history through the various decisions of many courts, and notably three by the United States supreme court, to-wit: the long and painful struggle of the plaintiff to have her father's will of 1813 established, and her rights recognized thereunder, which struggle culminated in her favor before the act of 1864 referred to. *Gaines* v. *Hennen*, 24 How. 553.

Who was responsible for this long delay? Hammond's position was, however, readily ascertainable from 1819. The plaintiff might, if she had any rights against him, have pursued them before 1830, and prior to Hammond's death. Because she was involved in a legal controversy with others, did the statute as to Hammond cease to run, whereby, after the lapse of more than a half century, she can pursue the Hammond estate? If so, then every person not a party to a suit must be held bound by its outcome, despite the statute of limitation; and thus the statutes of limitation become futile.

Reference has been made to certain decrees and judgments entered in favor of plaintiff by the United States circuit court in Louisiana. The facts and circumstances under which those decisions were had are unknown to this court. The cases seem to have been for the recovery of the possession of realty devised to her under the will of 1813, despite the sale made by Relf, Chew, and Mary Clark under the will of 1811. So, here, the property belonging to Daniel Clark's estate, sold by Hammond prior to 1819, (he acting as agent for Relf, Chew, and Mary Clark,) may in law belong to this plaintiff, unless her rights thereto are barred; but she is not seeking to recover said realty, but the amount paid to Hammond for said void transfers. It may be that the statute of limitations would bar any suit against the purchasers from Hammond; but, whether such be the fact or not, it is not seen how she can recover from Hammond's heirs the money judgment claimed by her, and have the same made a charge upon the lands which came to his heirs under the act of 1864. Again, her excuse for not proceeding in this matter at an earlier date, even if the same were valid, is met by the fact that in 1848 she filed a bill in this court wherein it appears that she was fully informed of all the facts that it is now averred she did not discover until a date long subsequent. In no possible view of the case, as presented by the bill, has she any right to maintain the same.

The demurrer is sustained and the bill dismissed.